## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PLAINTIFF:** | ) | **CASE NUMBER:** |
| | ) | |
| **John Donald Ball III, Esquire,** | ) | Case: 1:20–cv–02222 |
| a United States Citizen residing at | ) | Assigned To : Cooper, Christopher R. |
| 48 Blancoa Road, | ) | Assign. Date : 8/10/2020 |
| Ferndale, Western Australia 6148 | ) | Description: Pro Se Gen. Civ. (F–DECK) |
| Australia, | ) | |
| Telephone (from USA): +61-4-08372073 | ) | |
| (from within Australia): 0408372073, | ) | |
| Email: frogmarchw@gmail.com | ) | |
| | ) | |
| **versus** | ) | |
| | ) | |
| **DEFENDANTS:** | ) | |
| | ) | |
| **1.  The United States Department of State,** | ) | |
| Office of the Legal Adviser, | ) | |
| 2201 C Street, NW, HST, Room 6421, | ) | |
| Washington, DC 20520 | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **2.  Miranda Schlate,** | ) | |
| previously named Miranda Onischenko, | ) | |
| 55 Robson Place, | ) | |
| Fairfield, Connecticut 06824 | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**PRELIMINARY STATEMENT:**

1.  Comes now the **Plaintiff, John Donald Ball III, Esquire,** representing myself **pro se**, with the present Complaint and Petition for Declaratory and Injunctive Relief, **to petition this Court to declare as a matter of law, that the person born out of wedlock to an unwed foreign mother IN RUSSIA and named at birth Miranda Onischenko (hereafter "Miranda" or "Miranda Onischenko Schlate"),** of whom more identifying



RECEIVED

AUG  10  2020

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

details shall be provided herewith, **was mistakenly issued US citizenship documents by the US Department of State consequent to the Department of State's erroneous interpretation and erroneous application of the statute 8 USC 1409** (hereafter "the statute") as the erroneous basis for the issuance of Miranda's "Consular Report of Birth Abroad of a US Citizen" **having mistakenly named me**, a native born US citizen, as the child's father without any proof that my paternity of her had ever been established.  And **further to petition this Court to declare as a matter of law, that because the aforesaid person named at birth Miranda Onischenko has never been proved to have been legitimated as my daughter by any of the means prescribed by 8 USC 1409(a)(4), she has therefore never attained US citizenship by birth.**

2.  I respectfully ask this Court to take immediate notice of my "Proposed Interim Order" at the very end of this Complaint, in order to preserve and protect the rights of both myself and of the second named Defendant Miranda Onischenko Schlate until the final disposition of this case.

3. Although even my possible "blood relationship" (as in the statute's words) as Miranda's possible biological father has NOT been established by the extraordinarily strict standard of "clear and convincing evidence" as is required by the statute, which is an additional reason among the several other reasons why Miranda has never attained US citizenship through me, yet I want to emphasize at the outset that the statute makes a clear distinction between a "blood relationship" and "paternity" and treats them as two separate elements**:**  Because in all US states and territories, as well as in the applicable Federal statute 8 USC 1409, paternity is a legal status and not a merely biological one, and establishment of legal paternity is NOT coterminous with proof (even if proved) of being a biological father.

4.  Although the circumstances of this case give me reason to presume that one or several members of the Department of State have in good faith misinterpreted and misapplied the statute, yet I must clarify that I have no firsthand knowledge of whether anyone at the

Department of State has ever actually considered the statute at all, because their available records in Miranda's file, which I have lawfully procured through the Freedom of Information Act, make no direct reference to the statute.  For all I know, the Consular officer who issued those foundational US citizenship documents to Miranda, might have done so without considering any law at all.   However as a negligent or ignorant misinterpretation of the statute is the only plausible reason, other than gross negligence or willful misconduct, for those US citizenship documents to have been issued for Miranda, therefore I am presently obliged to proceed and argue as if the Department of State had actually intended to apply the necessary law, which could only be 8 USC 1409 concerning foreign-born children born out of wedlock to an unwed foreign mother and an unwed American father.

5.  Herein shall be proved, **as a matter of law and based only upon the documents in Miranda's US Citizenship files** which are known both to me and to the Defendant the Department of State who have them on record, and of which I possess certified copies lawfully obtained by me through the Freedom of Information Act, and with reference to no other evidence than is in those official records, **that the Department of State's records of documents purporting to support Miranda's claim to US citizenship by birth contain NO evidence OF THREE OF the four elements required by the statute, 8 USC 1409.**  Specifically absent are:  "Clear and convincing evidence" of a "blood relationship" between the child and the putative father; and an agreement by the putative father to support the child financially; and establishment of paternity by one of three statutorily prescribed means.

6.  The one and only element of 8 USC 1409 that I do not deny, is that I am a native-born US citizen and was physically present in the USA for five years before the child's birth.  Those facts are not controverted.  I deny that any of the three other required elements of 8 USC 1409 have ever been proved or documented, and I aver that they do not exist and have never

existed.

7.  Although I am confident that the incontrovertible factual averments in this complaint, combined with references to applicable law, ought to be sufficient for this Court to base its decision upon, yet if either of the Defendants chooses to dispute my Complaint's interpretations of law then I would respectfully ask the Court to permit all parties to submit briefs for more detailed arguments of statutory interpretation.

**EVIDENCE AND DISCOVERY:**

8.  No discovery and no testimony shall be necessary for the Court to decide this matter, because the present Complaint strictly concerns the legal interpretation of official records of the Department of State.  No evidence extraneous to those records can lawfully be proffered for the disposition of this Complaint.  As they are official government records they are self-authenticating, and the original documents as well as any true and undisputed averments of their exact contents are admissible as evidence as an exception to the Hearsay rule.

9.  Based on my subjective impressions of what for lack of a legally specific term I can only call "stonewalling" by the Defendant the Department of State, which I am not presently averring as a fact, only as my subjective basis for including this next detail:  I anticipate that the Department of State is likely to frivolously deny my averments with boilerplate answers of "Denied, strict proof demanded."  If they might do so, then I would respectfully remind this Court, and also remind the Defendant the Department of State, that all averments of material facts herein refer either to the Department of State's own official records or else to the non-existence of some records or the non-performance of some actions. Therefore there are two and only two ways for such "strict proof" to be provided to this Court:  Either for me to submit my own certified copies of those official records which are self-authenticating and require no testimony to authenticate them, or more simply for the Department of State to submit them to this Court either voluntarily or through a Court Order. But as both of those means would be unreasonably time-consuming and vexatious, I hope

rather that the Department of State shall choose simply to admit whatever of my factual averments they already know to be true, being in their own official records. Additionally I ask this Court please to take note that the Privacy Act does NOT restrain the Department of State from answering any of my averments about those records, because it is NOT a "disclosure" by them to me, for them to make reference to records already known to me and in my lawful possession. And although it might technically be a "disclosure" by them to this Court, yet that disclosure can readily be authorized by an Order of this Court, cf. 5 USC 552a(a)(11). (Federal Court cases interpreting the basis for a Court Order to overcome Privacy Act objections, have consistently used a simple standard of "relevance" of the records to facts material to the case being decided; if necessary I shall provide citations upon the Court's request.)

10. If the second named Defendant Miranda Onischenko Schlate might answer this Complaint by demanding strict proof of the contents of the relevant State Department records, and if she might not accept my own averments about the contents of those records nor be satisfied with my providing photocopies of them, then she would have the authority to procure the same records for herself through a Freedom of Information Act demand to the Department of State, for which I hereby give my written consent for the Department of State to disclose to Miranda any such records with my name or my personal information on them.

**PARTIES AND STANDING:**

11. I am the **PLAINTIFF, John Donald Ball III, Esquire, a United States citizen born in Pennsylvania** in 1963. I am also a naturalized Australian citizen, and as both the USA and Australia acknowledge dual-nationality I have retained my US citizenship and am a citizen of both countries, currently residing at 48 Blancoa Road, Ferndale, Western Australia 6148, where I have resided since 2010. Presently I represent myself **pro se** in this matter, because I am an American lawyer, **Pennsylvania Attorney 54978** (admitted 1989, currently retired),

therefore I am confident that I have the competence to represent myself in this matter.

12.  **The PRINCIPAL DEFENDANT is**, corporately and not any of its individual officers, **The United States Department of State** at the address in this complaint's caption.

11.  **The second Defendant named herein,** who might arguably be an indispensable party under Rule of Civil Procedure 19**,** is the aforementioned "Miranda" named in paragraph 1 supra:  In more detail, she is the person born in Russia in 2000 with the name on her apparent Russian birth certificate **Miranda Leonidovna Onischenko,** also named or known as **Miranda Vera Onischenko,** whose name was to my available hearsay knowledge changed in or about year 2010 to **Miranda Onischenko Schlate** which to my available knowledge is her current legal name**.**

12.  My reason for adding Miranda Onischenko Schlate as another Defendant is because I anticipate a reasonable possibility, although not a certainty, that there might be reasons for her joinder per Federal Rule of Civil Procedure 19 as an "indispensable party".  However I am not presently certain that Miranda Onischenko Schlate is an indispensable party, because she has no firsthand personal knowledge of any of the facts from which this Complaint arises, because all of those material facts occurred before she was two years old, therefore it is impossible for her to give any personal testimony about any of them.  Furthermore she took no part in any of the actions of which I am complaining and she has no personal legal authority or power to perform any of the remedies requested herein.  However as the final disposition of this Complaint shall inevitably concern the personal interests of Miranda Onischenko Schlate, therefore for the sake of thoroughness I am naming her as another Defendant to provide her with a reasonable and fair opportunity to defend her actual or perceived interests and rights (if any) in this matter, at least perhaps by her or her counsel submitting legal arguments about the interpretation of 8 USC 1409 and how it applies to her.

13.  As for the Defendant Miranda's rights to Procedural Due Process which might arguably be affected by the disposition of this case:  My understanding of the law is that she would

NOT be deprived of liberty or property BY a Declaratory Judgement that she is a non-citizen, because such a judgement would NOT immediately deprive her of any liberties, rather it would then become the responsibility of the Department of State to correct their records and inform Miranda of the mistake and then to refer Miranda's case to the Department of Immigration (ICE) for procedural due process on the question of her deportation or her alternative means (if any) of lawfully remaining in the USA.  In other words, my analysis respectfully submitted, is that this Court's disposition of the question of whether, as a matter of law, Miranda is a US citizen, would NOT in itself deprive her of any liberties, rather those later possible deprivations of her liberties would be an executive due process matter to be executed by the Department of State and the Department of Immigration.

14.  I the Plaintiff have **standing** to bring this Complaint because my name is on the initial US citizenship document issued for Miranda Onischenko Schlate as her putative legal Father, and her claim to US citizenship by birth is inseparable from me.  In addition to my obvious standing to demand correction of Department of State records naming me and directly concerning me, I also have standing to petition this Court for a correction of the direct consequence of those mistaken records of direct interest to me, the indispensable remedy for which is to declare Miranda to be a non-citizen of the USA.

**JURISDICTION AND VENUE:**

15.  The Federal Courts of the United States have **JURISDICTION** over this complaint and controversy because the principal defendant is an executive department of the United States Government, and also because it concerns a Federal Question as per Article III of the United States Constitution, specifically the interpretation and application of 8 USC 1409.  This Court the United States District Court for the District of Columbia, has **VENUE** because all of the actions and omissions complained of herein occurred either at the main office of the US Department of State in Washington DC, and/or at the United States Consulate in

Yekaterinburg Russia whose authority resides in Washington DC.

16.  This Complaint is NOT a tort claim for damages, therefore it does not arise under the Federal Tort Claims Act, therefore its VENUE is NOT the US Court of Federal Claims.  I mention this in anticipation of any possible vexatious argument by the Defendant the Department of State that this particular Complaint ought to have been filed under the Federal Tort Claims Act.

17.  By filing this Complaint For Declaratory Relief I am NOT waiving my right to file a possible related Federal Tort Claims Act complaint in a Federal Court at a later time.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES:**

18.  The Department of State have failed or refused to act upon any of my repeated demands to correct their specific records of which I presently complain, even after I have repeatedly explained to them the legal defects in those records by my series of letters and related documents all received by the Dept of State by registered mail beginning in year 2018 and continuing through June 2020.  Although upon demand by either Defendant or by this Court I shall be willing and able to submit voluminous documentation of my thwarted attempts to resolve this matter directly with the Department of State, for the sake of brevity at this time I shall only mention my most recent attempt to do so, which is in the official records of the Department of State as "Office of (Department of State) Inspector General reference number H20191264" which was forwarded BY the Office of Inspector General TO the Department of State's Executive Office of Consular Affairs AND TO the Department of State's Executive Office of the Legal Advisor on or about July 7 2020.

**STATEMENT OF FACTS**:

19.  I the Plaintiff was born in Pennsylvania USA in 1963, and I do not controvert that I am a native born US citizen or that I was physically present in the USA for five years before

Miranda's birth in Russia in year 2000.

20.  As I averred under oath in my unilaterally made and unilaterally signed affidavit sworn before a Pennsylvania State Notary in May 2001, **hereafter "my Pennsylvanian affidavit",** the original of which is in possession of the Department of State in their official records and has been made part of Miranda's US citizenship file:  I was in Russia from August 1998 to March 2000, and from December 1998 to March 2000 I was a frequent sexual partner of Miranda's mother, then named Alla Onischenko, and to my available knowledge her name is now Alla Schlate.

21.  The Department of State's own official records include Miranda's Mother's affirmation that she was UNmarried at the time of Miranda's birth and that she was NOT a US citizen at the time of Miranda's birth in Russia.

22.  In my Pennsylvanian affidavit of May 2001, I averred under oath to a Pennsylvania State Notary, my belief that (in my exact words on that document) "I am the natural father" of the aforesaid Miranda Onischenko.

23.  **My Pennsylvanian affidavit of 2001 was NOT an acknowledgement of paternity of Miranda.**  I claimed to be her biological father, my words were "natural father", but it was impossible for me to acknowledge paternity in that unilaterally executed document, because paternity is a legal status, not just a biological one, and **it is legally impossible for an unwed man to establish paternity unilaterally all by himself, without the child's Mother's written and sworn consent and agreement.**  This is particularly so under the Pennsylvania statute defining acknowledgment of paternity, 23 PA Consolidated Statutes 5103, which controls the definition of whether my Pennsylvanian affidavit was an acknowledgement of paternity; specifically the Pennsylvania statute distinguishes a unilateral "claim of paternity" from an "acknowledgement of paternity".

24. Miranda's mother did not co-sign my Pennsylvanian affidavit, and she has never agreed with it under oath, and she never took any measures to cooperate with me to establish my

paternity under Pennsylvania law.

25.  The official records of the Department of State contain NO statement ever made under oath by Miranda's Mother that I am Miranda's biological father.  Furthermore Miranda's mother has never sworn under oath that I was her sole and exclusive sexual partner at the approximate time of Miranda's conception.  Furthermore **there has never been any DNA test of my being Miranda's possible biological father**, and there is no evidence of any DNA test in the Department of State's records.  The one and only piece of evidence in the Department of State's official records that I might possibly be Miranda's biological father, is my Pennsylvanian affidavit in which I unilaterally claimed to be so, without Miranda's Mother's agreement.

26.  **To this day I have never seen Miranda in person, and I have never spoken with her by any means including electronic.**

27.  I never filed my Pennsylvanian affidavit with any government, state or Federal.

28.  I have never given Miranda's Mother any power of attorney to represent me.

29.  The Department of State's official records include what appears to be Miranda's Russian birth certificate.  Contrary to the usual practice of the Department of State, it was not translated into English, but as I can read some Russian I can hereby aver that **Miranda's Russian Birth Certificate names NO father.**

30.  In 2001 I sent my Pennsylvanian affidavit by mail from America to Miranda's mother in Russia, with my intention to try to persuade her to make Miranda my legitimate daughter under the laws of my own state in my own country.  I did not intend or expect for that document to be a final establishment of my paternity or my parental rights, because I knew it was no such thing. If it had been a documentation of my paternity then I would have retained it for myself and taken it to a Court in my own state of Pennsylvania to establish an immediate claim to exercise my newly established parental rights including the basic right of

contact with the child.  The reason why I sent it to Miranda's mother in Russia instead of

retaining it for myself, was because I knew that it was NOT an establishment of my paternity,

it was only one step toward hopefully establishing my paternity.  I include this averment to

rule out any extraneous implications or imputations by either of the Defendants that I

intended for the affidavit to be an establishment of my paternity, even though my subjective

intention in 2001 is immaterial to whether the affidavit met the objective legal criteria for an

acknowledgement of paternity.

31.  Miranda's mother retained my Pennsylvanian affidavit in her own possession in Russia,

and then approximately one year after I sent it to her, in May 2002 she submitted it to the US

Consulate in Yekaterinburg Russia in support of her application for Miranda's foundational

US Citizenship document, specifically a "Consular Report of Birth Abroad of a US Citizen"

issued on June 3 2002, consequent to which Miranda was also issued a US Passport almost

immediately afterward, all of which is in the official records of the Department of State.

32.  The Department of State's official records of the basis for the issuance of Miranda's US

citizenship documents (hereafter "Miranda's File"), contain NO official identification of me,

and NO evidence that I was ever contacted by the Department of State to give my own

evidence or argument about whether my paternity of Miranda had ever been established prior

to or upon the issuance of Miranda's unlawful US citizenship documents.

33.  I never submitted any original or certified copy of my Identification to any US Consulate

for the purpose of any application for Miranda's US citizenship documents.  There is NO

authenticated Identification of me in Miranda's file.

34.  Miranda's file in the US State Department's records, does contain a NON-certified

photocopy of one of my prior US Passports.  I can reasonably infer that that photocopy of my

prior US Passport, the Passport that I possessed when I was in Russia from August 1998 to

March 2000, was made or discovered and retained by Miranda's mother when I was with her

in Russia.  But that photocopy of my prior US Passport in Miranda's file, is NOT stamped

with the customary "Original Seen", because the original was in my possession in America at the time when Miranda's mother submitted the photocopy to the Consulate in Russia in 2002. Yet in Miranda's file, that NON-certified photocopy of my prior US Passport, is adjacent to a rubber-stamped Russian translation of the contents of my US Passport, from English into Russian.  (And the Russian translation of my US Passport in Miranda's file, was never translated back into English.)  I have no firsthand knowledge of why the US Consular officer accepted that patently unlawful document without even having it translated into English, but as I have some reading knowledge of Russian I can aver and affirm that it was NOT a certification of the original, it was only Russian translation of a photocopy.  I can only speculate plausibly that Miranda's Mother submitted it as an intentionally deceptive substitute for a certified copy of my US Passport, the successful deception being that the US Consular officer who accepted it was not literate in Russian and assumed, without a translation, that the Russian rubber stamp was a certification.  Otherwise I can think of no other logical explanation for its inclusion in Miranda's file other than intentional corruption involving an unlawful quid pro quo between Miranda's Russian Mother and the US Consular officer.  I think the former hypothesis of Consular incompetence and negligence is the most charitable explanation possible.

35.  **My Pennsylvanian affidavit signed in 2001, was NOT part of any then existing application for Miranda's US citizenship documents.  It was impossible for me to apply on Miranda's behalf for Miranda's US citizenship documents when I signed that affidavit in 2001, because I was not her legal father, and that affidavit did not make me her legal father.**

36.  Miranda's file contains NO agreement by me to support the child financially until she is 18 years old, as is required by 8 USC 1409.  In my Pennsylvanian affidavit I stated my willingness to do so, but there was no counter-party and no co-signer in the affidavit, and a

person cannot make an agreement with himself.

37.  Miranda's file contains NO "clear and convincing evidence" of my "blood relationship" as her biological father as is required by 8 USC 1409.  As there was never any DNA test, and as the one and only piece of such evidence in Miranda's file is my own unilateral claim to be her "natural father" without the Mother's agreement under oath, that single piece of disputable evidence fails to meet the statutory standard of "clear and convincing evidence." This is because of what ought to be the obvious and common sense reason, that a woman always has more knowledge about the identity of her offspring's biological father than any of her male sexual partners can ever have without a DNA test.  A male can only know that he is a possible biological father, but mere knowledge of the possibility is not clear and convincing evidence.

38.  Although the following averment is not material to the disposition of this Complaint, yet I believe it is prudent and necessary for me to mention it to avert an anticipated prejudicial answer by the second Defendant Miranda Onischenko Schlate whom I anticipate is likely to rely upon special pleading for sympathy:  When she was seventeen years old, during the final year in which I remained legally able to establish her US citizenship in the correct and lawful way, I contacted her by registered mail, received at her residence, to offer to correct her State Department records by my applying on her behalf for a true and lawful Consular Report of Birth Abroad, which I remained able to do for her up until the day before she turned eighteen. My only conditions for doing so were that she simply speak with me about it, and also submit to a DNA test to prove whether I am her biological father.  She did not reply to my offer and neither did anyone else on her behalf.  For good measure I also offered to sponsor her for emigration to Australia on a path to Australian citizenship, also conditional upon a DNA test, which Australian law enables me to do for a proved biological child even after she is an adult, but she did not reply and neither did anyone else on her behalf.  I respectfully remind this Court that Miranda's subjective reasons for refusing to communicate with me are immaterial

to the disposition of this matter, because the statute contains no exceptions for anyone's exquisitely fragile feelings.

39.  In the same vein as paragraph 38 supra, I also anticipate that Miranda's Mother is likely to prompt her to file a legally and factually non-responsive answer in a prejudicial attempt to change the subject to personal smears and character-assassination of me.  I trust that the Court shall disregard any such attempts and shall reprimand Miranda or her counsel if they attempt to do so.

40.  My paternity of Miranda was never established by any of the means strictly required and prescribed by 8 USC 1409(a)(4).

**ARGUMENT OF LAW:**

There is no such thing as any biological definition of US nationality; in other words there is no such thing as "American DNA", the very idea being repugnant to the purpose and outcome of the American Civil War.  US nationality is defined principally by the 14th Amendment as birth in the United States or its territories, to which are added statutory provisions such as citizenship by naturalization, or for children born abroad to at least one American parent, or in very rare cases by a special statute enacted for one specific person under special circumstances.  Furthermore I respectfully remind this Court that the definition of US citizenship, in all cases other than birth on US soil, is determined strictly by statutes of Congress and is therefore NOT within the discretion, let alone within the gift, of any officers of the Executive branch.

Considering the present case in the light most favorable to the Department of State and any of its officers who have been responsible for the mistaken issuance of citizenship documents to Miranda – in other words presuming that the Department's original and continuing mistakes have been made in good faith – the most likely explanation seems to be that they have made, and continue to make, a mistake of law:  Specifically that they have mistaken my Pennsylvanian affidavit for an acknowledgement of paternity in terms of 8 USC

1409(a)(4)(B).  However that misinterpretation of the statute is easily disproved, thus:

First of all, it is a basic canon of statutory interpretation, that there is a presumption against any statutory elements being redundant.  And 8 USC 1409 unambiguously makes a distinction between mere biological fatherhood and legal paternity, clearly treating them as two separate elements requiring separate proofs. In particular:

8 USC 1409(a) requires BOTH:

(1) "a blood relationship between the person and the father is established by clear and convincing evidence",

AND ALSO, proof of **one of** the following:

(4) "while the person is under the age of 18 years –

(A) the person is legitimated under the law of the person's residence or domicile, (or),

(B) the father acknowledges paternity of the person in writing under oath, or

(C) the paternity of the person is established by adjudication of a competent court."

Now, it ought to be obvious that the requirement of subsection (1), of clear and convincing evidence of a blood relationship, IF established, would NOT require any additional evidence of the biological element.  Therefore the additional requirements of subsection (4), all of which concern establishment of the legal status of paternity, were NOT intended to be a list of evidentiary standards of proof of biological fatherhood, because:

i.  The evidentiary standard was already specified in subsection (1) simply as "clear and convincing evidence", and,

ii.  If the requirements of subsection (4) were intended to be a list of evidentiary standards of proof of subsection (1), then they would have been specified as such, expressly with direct relation to subsection (1), which they were not.

Therefore to interpret any provisions of subsection (4), and in this present case particularly (4)(B) concerning acknowledgement of paternity, as being equivalent to and having the same

effect as proof of a "blood relationship", would be a redundant repetition of subsection (1).
Therefore the requirements of subsection (4) are **separate from and in addition to** that of
subsection (1).

Second:  As I have indicated in paragraph 23 supra, my Pennsylvanian affidavit of 2001 in
which I claimed to be Miranda's "natural father", was NOT an "acknowledgement of
paternity" as defined by the laws of Pennsylvania in which the affidavit was executed
unilaterally by me, without the Mother's participation or agreement.  **As that affidavit was
executed by me in Pennsylvania, before a Pennsylvania State Notary and NOT before
any US Federal authority or agency, the laws of Pennsylvania define whether or not it
was an "acknowledgement of paternity",** as follows:

**23 PA Consolidated Statutes 5103** specifies a clear and unambiguous difference between a
"claim of paternity" versus an "acknowledgement of paternity", as follows (with my own
emphases supplied):

Subsection (a):  "**Acknowledgement of paternity** – The father of a child born to an
unmarried woman may file with the Department of Public Welfare, on forms prescribed by
the department, an acknowledgement of paternity of the child which **shall include the
consent of the mother of the child, supported by her witnessed statement** subject to 18
PA C.S. 4904 (relating to unsworn falsification to authorities.)  In such case, the father shall
have all the rights and duties as to the child which he would have had if the father had been
married to the mother at the time of birth…"  (Etc, the remaining clauses of that subsection
are not material to the present case.)

But then the next subsection of that Pennsylvania statute makes the following distinction:

Subsection (b):  "**Claim of paternity – If the mother of the child fails or refuses to join in
the acknowledgement of paternity provided for in subsection (a), the Department of
Public Welfare shall index it as a claim of paternity**.  The filing and indexing of **a claim of
paternity shall not confer upon the putative father any rights as to the child** except that

the putative father shall be entitled to any notice of legal proceedings brought to terminate any parental rights as to the child."

Therefore according to Pennsylvania law, my affidavit of 2001 was at most a mere "claim of paternity" and specifically NOT an "acknowledgement of paternity", yet even under the Pennsylvania statute my affidavit was not even a "claim of paternity" because of the additional defect that it was never filed with the PA Department of Public Welfare as the statute requires.  It was and remains nothing more than, and with no more legal effect than, a piece of disputable evidence of my possible biological fatherhood of Miranda.  It did not even give me any legal standing to sue to enforce any parental rights, not even the basic right of contact, in any American Court, state or Federal, nor in any foreign country.

Third:  In a relatively recent, and still binding, US Supreme Court decision, **Nguyen v INS, 533 US 53 (2001),** specifically concerning the same statute as is controverted herein, the Supreme Court explained the policy reasons underlying the requirements of 8 USC 1409(a)(4), for legal paternity to be established for a foreign-born child born out of wedlock to an unwed American father**, in addition to** proof of biological fatherhood.  In that case – unlike in this present case before this Court – the unwed American father's biological fatherhood of the foreign-born person had actually been proved by a DNA test. However the father had never established paternity of the foreign-born person by any of the means strictly required by 8 USC 1409(A)(4), and therefore the Supreme Court ruled that the person had never attained US citizenship by birth, regardless of the proved DNA relationship.  As for the policy underlying the statute and warranting its strict application, the Supreme Court explained per Justice Kennedy**:**

**"The second governmental interest furthered by §1409(a)(4) is the determination to ensure that the child and citizen parent have some demonstrated opportunity to develop a relationship that consists of real, everyday ties providing a connection between child and citizen parent and, in turn, the United States.  Such an opportunity inheres in the**

**event of birth in the case of a citizen mother and her child, but does not result as a matter of biological inevitability in the case of an unwed father…Section 1409 takes the unremarkable step of ensuring that the opportunity inherent in the event of birth as to the mother-child relationship exists between father and child before citizenship is conferred upon the latter. That interest's importance is too profound to be satisfied by a DNA test because scientific proof of biological paternity does not, by itself, ensure father-child contact during the child's minority."**

Now although this present Complaint is not the place in which to aver all of the particular damages I have suffered and continue to suffer as direct and foreseeable consequences of the Department of State's actions and omissions complained of herein – those damages being more properly and thoroughly addressed in a Federal Tort Claims Act Complaint, which this present Complaint is not - yet I think it is apposite and appropriate for me presently to mention the most important one, **as an example of what Congress intended to prevent by the strict requirements of 8 USC 1409(a)(4) concerning establishment of paternity:**

In particular:

Miranda's Mother has, since at least year 2008 to my knowledge and inferably for longer than that, accused me to various persons including Miranda, of my having "abandoned" Miranda since her birth.  (And although it is not material to this Complaint, Miranda's Mother's accusation that I "abandoned" Miranda, is in official records of the State of Connecticut dated 2008 and 2009, which I mention here just in case anyone might deny it in this present controversy.)   However it is impossible for an unwed man to "abandon" an illegitimate child unless and until after he has established a legal parental status including at least some parental rights and duties.  Therefore when the Department of State issued the aforesaid US citizenship documents to Miranda, naming me as her legal father, it created a false appearance – including especially to Miranda, who to this day has never had that false appearance officially corrected for her – that I had established a parental status with duties

and rights that I failed or refused to exercise.  Thus the Department of State's continuing refusal to correct the record, continues to support a false appearance that I shirked my parental duties and "abandoned" Miranda, without any of my legal parental rights or duties ever having been established in the first place.   And in that light, a few more common sense observations are in order:

The very fact that a child's parents have never been married to each other, proves in itself that they have not demonstrated much, if any, habitual cooperation with each other concerning family formation and parenting.  Such cooperation is presumed in marriage, but by the same token cannot reasonably be presumed outside of marriage.  To this obvious fact is added, in my case and similar cases of unwed men with possible biological children born abroad, another obvious fact that the unwed American man is highly unlikely to reside in the child's foreign country of birth and residence, as I did not for the blindingly obvious reason that I am not Russian. Consequently it is all too easy for a foreign unwed mother to tell the child that the reason for the father's mysterious absence is "abandonment", a slander which the man cannot personally refute for the child unless and until he has established a legal parental status and standing to enforce at least some right of contact with the child. Furthermore in such cases, including mine, the child is a captive audience of the Mother, who can – and in my case, did – denigrate the absent biological father to the child, without the father having any legally enforceable means of communicating with the child to answer the slanders and denigrations for himself.  These were among the foreseeable, and arguably even inevitable, consequences of the Department of State's failure to take even the most simple and easily accomplished precautions of contacting me before naming me as Miranda's legal father and designating her as a US citizen on that false basis; in other words a timely establishment of my legal paternity while Miranda was still an infant, could have at least afforded me an opportunity to establish contact with the child before too much damage had been done to our potential relationship, but when the Department of State went ahead and issued US citizenship documents for Miranda then the Mother no longer had any practical

incentive to cooperate with me at all, having attained the one and only thing she wanted from me, to "strip mine" my American nationality for the sole purpose of getting a US Passport for her foreign-born daughter, even while she continued to claim "abandonment".  (This attribution of the Mother's intention is not speculative, because in another later statement she made to the Department of State in 2007, also in the Department's official records, she made it clear that she never intended for me to be involved in Miranda's life but she did want the US Passport for, in her words, its "privileges" for Miranda "such as education", the latter being an outrageous trivialization of the essence of US nationality and allegiance.  I have not referred to that particular record in my above averments of fact because it is not material to this Complaint, however I mention it here to deflect any possible denial that getting a US Passport for Miranda was the Mother's one and only intention, separate from and excluding any intention to establish my paternity.)

Further to which, I have debated with myself whether to add this one more common sense observation, which I cannot adequately express without some justifiable sarcasm, for which I beg the Court please to permit me:  Also in 2007, in a statement to the Department of State which is in the Department's official records, the Mother wrote, "He (I, John Ball) never supported us."  In context "us" evidently meant both her and Miranda, even though no man is ever obliged to support an adult woman (or man) he has never married, but obviously she meant that I had never paid child support:  To which I answer:  Only in an alternative universe of narcissistic maniacs would any unwed mother believe she is entitled to child support from a man whose paternity she refuses to establish.

In sum, the personal consequence for me has been an outrageous misrepresentation and inversion of my demonstrated intention to overcome my absence from Miranda's life, which self evidently was impossible for me to do without establishing some fundamental parental rights and duties enforceable by law, rather than needing to rely entirely on the Mother's goodwill toward me, of which little or none has been shown to exist.

Therefore in light of all of the foregoing averments of incontrovertible facts, and statements of law, I submit that this is precisely the kind of case that Congress intended to prevent by its strict and clear provisions of 8 USC 1409(A)(4), which were and continue to be violated by the Department of State unless and until the Court exercises its authority to correct the matter, by the means for which I presently petition the Court, as follows:

**STATUTORY BASIS FOR RELIEF:**

The statutory basis for the relief requested herein is 28 USC 2201.

**PRAYER FOR RELIEF:**

In light of the above I respectfully petition this Court:

1.  To declare as a matter of law, and based upon the official records of the Department of State and upon no other evidence extraneous to those records, that my paternity of Miranda Onischenko Schlate was never established by any of the means required and prescribed by 8 USC 1409(a)(4); and,

2.  To declare as a matter of law, and based upon the official records of the Department of State and upon no other evidence extraneous to those records, that my "blood relationship" with Miranda Onischenko Schlate was never established by the strict standard of "clear and convincing evidence" as required by 8 USC 1409(a)(1); and,

3.  Therefore to declare that Miranda Onischenko Schlate is not and has never been a US citizen by birth.

**PROPOSED FINAL ORDERS:**

I respectfully petition this Court to issue the following final orders, or similar orders differently worded in the Court's discretion, upon the Court's final disposition of this case:

1. There being no evidence provided for the Court that Miranda Onischenko Schlate has ever attained US citizenship by any other means than a false representation that she was

the legitimated daughter of John Donald Ball III, the Court declares her to be a non-citizen of the United States and subject to deportation unless she can prove to the appropriate Executive offices of the United States that before the date of this Order she had already attained any alternative lawful basis for residing in the USA as a non-citizen.

2.  The Department of State is ordered to take all reasonable and necessary actions, within a reasonably practicable time after the date of this Order:

a.  To correct and amend the Department of State's records to reflect that John Donald Ball III was never the legal father of Miranda Onischenko Schlate; AND,

b.  To cancel all unlawfully issued US citizenship documents of Miranda Onischenko Schlate, including her Consular Report of Birth Abroad and any current US Passport, for which the office of the Secretary of State has the authority and the duty to perform as per 8 USC 1504; AND,

c.  To refer the case of Miranda Onischenko Schlate to the Department of Immigration and Customs Enforcement, for executive action in accord with this Court's Judgement and Order.

3.  The Defendant the Department of State having shown no reasonable basis upon which to contest the Plaintiff's Complaint, the Plaintiff's court fee and related costs of service of Summonses shall be reimbursed to the Plaintiff, to be paid by the Department of State through the appropriate administrative agency.

**PROPOSED INTERIM ORDER:**

I also respectfully petition this Court to issue the following Interim Order immediately, to protect the interests of both myself and Defendant Miranda Onischenko Schlate until the present controversy is finally decided without further appeal:

"Neither the Plaintiff John Donald Ball III nor the Defendant Miranda Onischenko Schlate,

nor any party claiming to represent the interests or rights that Miranda Onischenko

Schlate might have had in her minority, shall commence any lawsuit of any kind against each

other in any court of the United States whether state or federal, including but not limited to

actions for back child support or for any other causes based upon the question of their

controverted parent-child relationship, and no existing court order, if any exist, based upon or

directly related to the present controversy shall be enforced by any court in the United States

whether state or federal, unless and until after this present controversy is finally decided by

this Court without appeal or finally by a United States appellate court without further appeals

by either of those two parties or their representatives."


**Respectfully submitted by the undersigned hereby affirming that this Complaint's**

**averments and purposes are in accord with Federal Rule of Civil Procedure 11:**


**John Donald Ball III, Esquire**
pro se, Pennsylvania Attorney Number 54978