**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **JOHN DONALD BALL, III**,<br><br>Plaintiff,<br><br>v.<br><br>**DEPARTMENT OF STATE,** *et al*.,<br><br>Defendants. | Case No. 20-cv-02222 (CRC) |

<u>**MEMORANDUM OPINION**</u>

Chivalry may not be dead, but it is surely missing in this case.  In the early aughts, Plaintiff John Donald Ball III submitted a sworn affidavit in support of a petition to the State Department to confer citizenship to Miranda Onischenko, who was born in Russia to a non-citizen mother.  In the affidavit, Ball attested that he was a U.S. citizen and that Ms. Onischenko was his daughter.  The State Department granted the petition, issuing Ms. Onischenko a Consular Report of Birth Abroad ("CRBA") and a U.S. passport under 8 U.S.C. § 1409, which extends citizenship to certain children born overseas to unwed parents, only one of whom is a United States citizen.  Almost two decades later, Ball apparently has had a change of heart.  He now contends in this lawsuit that Ms. Onischenko's citizenship documents were wrongfully issued because her application failed to establish his paternity.  On that basis, Ball asks the Court to compel the State Department to "correct" its files and declare that Ms. Onischenko is *not* a United States citizen by birth.  Finding that Ball lacks standing to bring this case, the Court dismisses it for lack of jurisdiction.

I.      **Background**

In 1998, John Donald Ball III, a U.S. citizen, traveled to Russia where he met Alla

Leonidovna Onischenko, who currently goes by her married name, Ms. Schlate.  Compl. at 9,

ECF No. 1.[1]  According to Ball, he and Ms. Schlate had an intimate relationship and resided

together for an extended period before he left Russia in March 2000.  Id.; Mot. to Dismiss, Ex. 1,

ECF No. 7-2 (hereinafter, "Ex. 1").[2]  Seven months after Ball's departure, Ms. Schlate gave birth

to a daughter named Miranda ("Ms. Onischenko").[3]  Ex. 1, at 1.  The following year, Ball

prepared a sworn affidavit in support of Ms. Schlate's application for United States citizenship

on behalf of her daughter.  See Ex. 1 (affidavit "in support of the citizenship of Miranda

Leonidovna Onischenko").  In that affidavit, Ball attested that he is Ms. Onischenko's "natural

father" and "request[ed] the Consul General of the United States . . . register [his] daughter,

Miranda Leonidovna Onishchenko, as a citizen of the United States." Id. at 1, 3.  On June 3,

2002, the State Department issued Ms. Onischenko a CRBA and a U.S. passport.  Compl. at 11.

Eighteen years later, Ball filed this lawsuit alleging that the State Department's decision

to issue Ms. Onischenko citizenship documents was erroneous.  According to Ball, the State

---

[1] Ball has not bothered to number the bulk of the paragraphs or pages in his complaint, see Compl. at 14–23, nor has he paginated his brief in opposition, see Resp., ECF No. 9 (hereinafter, "Opp.").  References to these filings thus rely on the pagination automatically generated by the Court's electronic document filing system.

[2] Courts may consider materials outside the pleadings when evaluating a motion to dismiss for lack of jurisdiction.  Jerome Stevens Pharms. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

[3] There is some inconsistency in the filings as to Miranda's surname.  While Ball's affidavit identifies her as Miranda Leonidovna Onischenko, his Complaint refers to her as Miranda Onischenko Schlate. Compl. at 1.  Additionally, Ball's spelling alternates between "Onischenko," "Onishchenko," and "Onishenko."  Compare Ex. 1 with Compl. and Mot. to Dismiss.  For the sake of clarity, the Court refers to her as Ms. Onischenko.

Department misapplied 8 U.S.C. § 1409 by granting Ms. Onischenko a CRBA and passport when her application failed to establish the statute's elements, including Ball's paternity, by clear and convincing evidence.  See Compl. at 2, 13, 21.  On that basis, Ball asks the Court "to declare as a matter of law" that Ms. Onischenko "was mistakenly issued US citizenship documents by the US Department of State[.]"  Id. at 2.  Ball also seeks a declaration that Ms. Onischenko "has never been proved to have been legitimated as [his] daughter" and "has therefore never attained US citizenship by birth."  Id.; see also id. at 21.

Ball filed this suit on August 12, 2020, naming both the State Department and Ms. Onischenko as defendants.  Ms. Onischenko has not appeared to answer or otherwise respond to Ball's complaint.  The State Department, however, timely moved to dismiss Ball's complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).  With respect to Rule 12(b)(1), the government argued that Ball failed to allege any concrete or imminent injury fairly traceable to the State Department's decision to issue Ms. Onischenko a CRBA and United States passport.  As to Rule 12(b)(6), the government argued that Ball's complaint is barred by the six-year statute of limitations governing challenges to final agency action under 5 U.S.C. § 704.[4]

## II.   Legal Standard

Under Rule 12(b)(1), plaintiffs bear the burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction to hear their claims.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); see also, e.g., Grell v. Trump, 330 F. Supp. 3d

---

[4] Additionally, the government moved to file a court document under seal in support of its reply, Mot. for Leave to File, ECF No. 12, which Ball opposed, Resp., ECF No. 14.  Because the Court finds that dismissal is warranted absent consideration of the proposed sealed document, the Court will deny the government's motion as moot.

311, 316 (D.D.C. 2018) (Cooper, J.).  When determining whether plaintiffs have carried that

burden, courts must "assume the truth of all material factual allegations in the complaint, and

construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be

derived from the facts alleged[.]" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir.

2011) (cleaned up).  Where, as here, "the plaintiff is not himself the object of the government

action or inaction he challenges," standing is "substantially more difficult to establish." Lujan,

504 U.S. at 562 (cleaned up).

The Court will grant the government's motion to dismiss under Rule 12(b)(1) and thus

need not recite the legal standard for dismissal under Rule 12(b)(6).

### III.  Analysis

To have standing, a plaintiff must show that he has: "(1) suffered an injury in fact, (2)

that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be

redressed by a favorable decision." Spokeo v. Robbins, 136 S. Ct. 1540, 1547 (2016).  An injury

in fact must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical[.]" Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167,

180 (2000).  A "concrete" injury must be "real," rather than "abstract[.]" Spokeo, 136 S. Ct. at

1548 (cleaned up).

Ball satisfies none of the requirements for Article III standing.  Before addressing the

requirements individually, the Court makes two preliminary points.

First, Ball's filings focus on whether the State Department adequately applied the

elements of § 1409 to Ms. Onischenko's citizenship application.  See Compl. at 2–3, 12–19.  But

whether the State Department correctly interpreted § 1409 is irrelevant to whether its

determination injured Ball.  See, e.g., Dimond v. District of Columbia, 792 F.2d 179, 190 (D.C.

4

Cir. 1986) (noting that "[i]njury consisting *solely* of a government's alleged failure to act in accordance with law has been held not to amount to judicially cognizable injury in fact for purposes of Article III standing") (emphasis in original)).  The Court thus declines to decide whether the State Department properly applied the elements of § 1409.  *Second*, Ball's repeated assertions that his standing is "obvious," Compl. at 7, and "self[-]evident," Opp. at 4, are mistaken.  See, e.g., Opp. at 4 ("I had presumed that [the] basis for standing would have been self-evident to any sensible adult . . . [b]ecause being named as someone's legal Father is one of the most deeply personal imputations that can be made").  Courts characterize standing to be "self-evident" where the plaintiff is directly regulated by the agency action he or she challenges. Cf. Grocery Mfrs. Ass'n v. E.P.A., 693 F.3d 169, 174–75 (D.C. Cir. 2012) (concluding that standing was not self-evident where the challenged "decisions [did] not on their face directly impose regulatory restrictions, costs, or other burdens" on petitioners).  Ball challenges the State Department's decision to issue Ms. Onischenko citizenship documents.  It is Ms. Onischenko, not Ball, who is the object of that decision.

The Court now turns to the elements of Article III standing.  Starting with injury in fact, Ball's primary theory is that the CRBA injures him by implying that he is Ms. Onischenko's father.  He surmises that the State Department's "refusal to correct" Ms. Onischenko's CRBA "support[s] a false appearance that [he] shirked [his] parental duties and abandoned Miranda," when it is in fact "impossible for an unwed man to abandon" a child absent "at least some parental rights and duties." Compl. at 18–19 (cleaned up).  This claimed injury is completely unsupported and belies common sense.  The CRBA merely reflects the sworn statement Ball made shortly after Ms. Onischenko's birth that he is her father.  See Ex. 1.  It says nothing of how Ball's relationship to Ms. Onischenko would develop over the subsequent decades.

"[R]eputational injury that derives *directly* from government action will support Article III standing to challenge that action." Foretich v. United States, 351 F.3d 1198, 1214 (D.C. Cir. 2003) (emphasis added).  By contrast, "[p]urely speculative or conclusory assertions of the consequences of [an] alleged stigma do not satisfy the Supreme Court's requirement for specific, concrete facts demonstrating a particularized injury." Alamo v. Clay, 137 F.3d 1366, 1370 (D.C. Cir. 1998); see also id. (injury-in-fact element was not satisfied where the challenged decision "lack[ed] any stigmatizing content on its face" and plaintiff failed to show that any stigma implied by the decision "would actually have any detrimental consequences").  Ball's unsupported allegations of an unflattering narrative created by the CRBA fall into the second camp.[5]

Regardless, to the extent that the implication of paternity has injured Ball—of which the Court is unconvinced—that injury is not fairly traceable to defendants' conduct.  Again, in May 2001, Ball prepared a sworn statement that he is "the natural father" of Ms. Onischenko. Ex. 1. Ball does not dispute the authenticity of that sworn statement.  See, e.g., Opp. at 2.  Indeed, it was on that basis that Ball "respectfully request[ed] the General Consul of the United States to register [his] daughter, Miranda Leonidovna Onischenko, as a citizen of the United States." Ex. 1 at 4.  Years later, Ball *again* declared himself to be Ms. Onischenko's father when requesting

---

[5] Moreover, Ball elsewhere argues that he is injured by the *lack* of paternity rights created by the CRBA.  See, e.g., Compl. at 20 ("the personal consequence for me has been an outrageous misrepresentation and inversion of my demonstrated intention to overcome my absence from [Ms. Onischenko's] life, which self[-]evidently was impossible for me to do without establishing some fundamental parental rights and duties enforceable by law"); id. at 19 (claiming that an "inevitable[] consequence[]" of the State Department record is that his daughter is a "captive" of her mother who "slanders" Ball while he lacks "any legally enforceable means" to respond). These statements are in considerable tension with Ball's claim that he is injured by the mere implication of paternity.

that the State Department alert him if anyone applied for a passport in her name.  See Reply, Ex. A, ECF No. 13-1.  In support of that request, Ball attached *the same* CRBA of which he now complains.  Id.  Any perception that Ball is Ms. Onischenko's father is thus attributable to Ball rather than the State Department. [6]

Ball's remaining arguments bare little mention.  First, he contends that the State Department's decision to issue Ms. Onischenko citizenship documents based on his affidavit violated the Tenth Amendment.  See Opp. at 2, 13.  For starters, this claim is completely absent from Ball's complaint.  Regardless, the State Department's conferral of U.S. citizenship documents is well within the federal government's broad powers over the subject of naturalization.  See Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 419 (1948).

Finally, Ball complains that Ms. Onischenko or Ms. Schlate may suddenly demand that Ball backpay child support, causing him "unjust financial loss or ruin."  Opp. at 7.  Yet Ball submits no evidence that either woman has any such intentions, let alone that a demand is "certainly impending," Clapper v. Amnesty Int'l USA, 568 U.S. 398, 401 (2013).  Accordingly, the unsubstantiated specter of child support is insufficient to confer standing in this case.

---

[6] Further undermining Ball's theory of standing are his repeated allegations that Ms. Onischenko's mother (rather than the State Department) is the source of the false narrative that Ball abandoned his daughter.  See, e.g., Compl. at 18–19.  A court order compelling the State Department to revoke Ms. Onischenko's citizenship will (at best) have no effect on how Ms. Schlate chooses to portray Ball in her private conversations.  Ball's alleged injury is thus neither traceable to the State Department nor redressable by court order.

**IV.   Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss for lack of jurisdiction.  A separate Order shall accompany this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>July 30, 2021</u>